**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAMAR OGELSBY,** | : | **CIVIL ACTION** |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **NO.   19-cv-5598** |
| | : | |
| **TAMMY FERGUSON, et al.,** | : | |
| **Respondents.** | : | |

## <u>MEMORANDUM</u>

**SITARSKI, M.J.**                                                                                          **July 12, 2021**

Presently before the Court is Petitioner's counseled Corrected Motion for Leave to Amend Habeas Petition While Federal Proceedings Are Stayed or, in the Alternative, to Lift Stay for the Purpose of Allowing Amendment (Corrected Mot. to Am., ECF No. 27), the Commonwealth's response thereto (Resp., ECF No. 28), and Petitioner's reply in support (Reply, ECF No. 31).  For the following reasons, the corrected motion for leave to amend is **GRANTED in part** and **DENIED in part**.[1]

## I.       FACTUAL AND PROCEDURAL BACKGROUND

On June 18, 2013, a jury found Petitioner guilty of first-degree murder and conspiracy for the December 24, 2006 killing of Robert Rose.  *Commonwealth v. Ogelsby*, No. 3048 EDA 2013, 2014 WL 10558206, at *1 (Pa. Super. Ct. Nov. 25, 2014); Crim. Docket at 4-5.  That same day, Petitioner was sentenced to life imprisonment without the possibility of parole for the murder conviction, as well as a concurrent term of 20 to 40 years for the conspiracy conviction.

---

[1] Petitioner initially filed an identical motion, but his counsel forgot to sign it.  (Mot. to Am., ECF No. 26; Corrected Mot. to Am., ECF No. 27, at 1 n.1).  The Court denies that motion as moot in light of the filing of the corrected motion.

*Ogelsby*, 2014 WL 10558206, at *3; Crim. Docket at 5.  Petitioner filed a counseled notice of a direct appeal with the Pennsylvania Superior Court on September 12, 2013.  *Id.* at *4; Crim. Docket at 12.  The Pennsylvania Superior Court affirmed Petitioner's sentence on November 25, 2014.  *Ogelsby*, 2014 WL 10558206, at *12; Crim. Docket at 13.  On July 8, 2015, the Pennsylvania Supreme Court denied allowance of appeal.  *Commonwealth v. Ogelsby*, 117 A.3d 1281 (Pa. 2015) (table decision).

On April 13, 2016, Petitioner filed a counseled petition for relief under Pennsylvania's Post-Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. § 9541 *et seq.*  *Commonwealth v. Ogelsby*, No. 749 EDA 2017, 2018 WL 4290654, at *3 (Pa. Super. Ct. Sept. 10, 2018); Crim. Docket at 13.  Petitioner, through counsel, amended his PCRA petition on October 24, 2016.  *Ogelsby*, 2018 WL 4290654, at *3; Crim. Docket at 14.  On February 10, 2017, the PCRA court denied the amended petition.  *Ogelsby*, 2018 WL 4290654, at *3; Crim. Docket at 15.  Petitioner filed a counseled notice of appeal on February 13, 2017, and subsequently filed a counseled brief with the Pennsylvania Superior Court on March 6, 2017.  *Ogelsby*, 2018 WL 4290654, at *3; Crim. Docket at 15.  The Superior Court affirmed the PCRA court's decision on September 10, 2018.  *Ogelsby*, 2018 WL 4290654, at *12; Crim. Docket at 16.  On June 10, 2019, the Pennsylvania Supreme Court, per curiam, denied allowance of appeal.  *Commonwealth v. Ogelsby*, 214 A.3d 230 (Pa. 2019) (table decision).

On June 19, 2019, Petitioner filed a second counseled PCRA petition.  *Commonwealth v. Ogelsby*, 245 A.3d 1112, 2020 WL 7780108, at *3 (Pa. Dec. 30, 2020) (table decision); Crim. Docket at 16.  Petitioner, through counsel on September 16, 2019, amended this second PCRA petition.  *Ogelsby*, 245 A.3d 1112, 2020 WL 7780108, at *3; Crim. Docket at 16.  The PCRA court denied the amended second PCRA petition on November 14, 2019.  *Ogelsby*, 245 A.3d

1112, 2020 WL 7780108, at *4; Crim. Docket at 17. Petitioner filed a counseled notice of appeal on December 16, 2019, and subsequently filed a counseled brief with the Pennsylvania Superior Court on January 13, 2020. *Ogelsby*, 245 A.3d 1112, 2020 WL 7780108, at *4; Crim. Docket at 18. The Superior Court affirmed the PCRA court's decision on December 30, 2020. *Ogelsby*, 245 A.3d 1112, 2020 WL 7780108, at *9; Crim. Docket at 18-19.

On November 27, 2019, while Petitioner's Superior Court appeal was pending, he filed a counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Hab. Pet., ECF No. 1-1). He refiled the petition on the standard form on December 16, 2019. (Hab. Pet., ECF No. 6). Petitioner filed his supporting brief on June 29, 2020, to which the Commonwealth filed its response on October 1, 2020. (Br. in Supp. of Hab. Pet., ECF No. 16; Resp. in Opp., ECF No. 20). On October 17, 2020, Petitioner amended his habeas petition to add the following two claims to the ten already asserted:

> Claim XI: The Commonwealth violated *Brady*[2] when it failed to disclose an eyewitness [Terrence Williams] who identified someone other than Petitioner, as the shooter.
>
> Claim XII: Trial counsel was ineffective for failing to locate and interview Andre Davis, Sean Harris' nephew, who would have contradicted Harris' testimony that Harris saw Petitioner commit the shooting.

---

[2] In *Brady v. Maryland*, 373 U.S. 83 (1963), the United States Supreme Court determined that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. A *Brady* violation refers to "any breach of the broad obligation to disclose [material] exculpatory evidence," which the Supreme Court has interpreted to mean the "nondisclosure [of the evidence] was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281, 119 S. Ct. 1936, 144 L.Ed.2d 286 (1999).

(Am. Hab. Pet., ECF No. 22).  Also on that date, Petitioner filed an unopposed motion to stay and abey federal proceedings to exhaust his *Brady* claim regarding eyewitness Williams.  (Mot. to Stay, ECF No. 21, at ¶¶ 3-5).  The Commonwealth filed its response on October 27, 2020, to which Petitioner filed a reply on November 3, 2020.  (Resp. to Second Am. Hab. Pet., ECF No. 23; Reply in Supp. of Second Am. Hab. Pet., ECF No. 24).  On November 19, 2020, I granted Petitioner's motion and ordered this matter stayed pending the resolution of his ongoing PCRA proceedings for him to exhaust his claims.  (Order, ECF No. 25).

Petitioner filed a third counseled PCRA petition on March 18, 2021.  (Third PCRA Pet., ECF No. 28-1; Crim. Docket at 19).  As of the date of this memorandum, this petition remains pending.  Petitioner's third PCRA petition raises the following three claims under *Brady*: (1) "the Commonwealth suppressed critical eyewitness Terrence Williams, who identified someone other than Petitioner as the shooter"; (2) "the Commonwealth suppressed evidence that eyewitness Sean Harris received favorable treatment in a pending criminal matter in exchange for his cooperation against Petitioner"; and (3) "the Commonwealth violated due process by misrepresenting the timing of Troy Hill's[3] cooperation and by suppressing evidence that Troy Hill was promised favorable treatment in a pending criminal matter in exchange for his cooperation against Petitioner."[4]  (Third PCRA Pet., ECF No. 28-1, at 34-68).  In addition, the PCRA petition raises claims based on "after-acquired evidence – namely, the testimony of Andre

---

[3]  Hill claims to have witnessed Petitioner and another man, Michael Gibbons, shoot and kill Rose.  *Ogelsby*, 245 A.3d 1112, 2020 WL 7780108, at *2.

[4]  Petitioner also asserts this third PCRA claim under *Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L.Ed.2d 1217 (1959).  The state violates the Fourteenth Amendment due process guarantee when it knowingly fails to correct false testimony in a criminal proceeding.  *Giglio v. U.S.*, 405 U.S. 150, 153 (1972) (citing *Napue*, 360 U.S. at 269) (holding a due process violation occurs where "the State, although not soliciting false evidence, allows it to go uncorrected when it appears").

Davis, which establishes that Harris did not see Rose's shooting," and cumulative error. (*Id.* at 68-78).

On June 14, 2021, Petitioner filed the instant motion. (Corrected Mot. to Am., ECF No. 27). Petitioner seeks to add a "supplement" to the first claim in his habeas petition, as well as a new *Brady* claim:

> Claim Ia: The Commonwealth failed to disclose that eyewitness Troy Hill was promised and received consideration in a pending criminal matter for implicating Petitioner.
>
> Claim XIII: In violation of *Brady v. Maryland*, the Commonwealth suppressed evidence that eyewitness Sean Harris received favorable treatment in a pending matter in exchange for his cooperation against Petitioner.

(Third Am. Hab. Pet., ECF No. 26-2). The Commonwealth filed its response to Petitioner's motion on June 22, 2021. (Resp., ECF No. 28). Petitioner filed his reply on June 28, 2021. (Reply, ECF No. 31)

## II. LEAVE TO AMEND

### A. Legal Standard

Habeas petitions "may be amended . . . as provided in the rules of procedure applicable to civil actions." *Mayle v. Felix*, 545 U.S. 644, 654 (2005) (citing 28 U.S.C. § 2242). Federal Rule of Civil Procedure 15 governs and is "made applicable to habeas proceedings by § 2242, Federal Rules of Civil Procedure 81(a)(2), and Habeas Corpus Rule 11." *Id.* at 655. Federal Rule of Civil Procedure 15(a)(2) states that, after an answer has been filed, "a party may amend its pleading only with . . . the court's leave." FED . R. CIV. P. 15(a). "The court should freely give leave when justice so requires," and the Third Circuit has held that "motions to amend pleadings should be liberally granted." *Id.*; *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). However,

leave to amend under Rule 15 may be denied in cases of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; or (4) futility of amendment. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Given the liberal standard of Rule 15(a), the party opposing amendment bears the burden of showing the existence of one of these factors. *E.E.O.C. v. Hussey Copper Ltd.*, No. 08-809, 2009 WL 918298, at *1 (W.D. Pa. Apr. 2, 2009); *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 700 (E.D. Pa. 2007). The decision to grant or deny a motion for leave to amend is within the sound discretion of the district court. *Cureton*, 252 F.3d at 272.

**B.    Discussion**

The instant motion seeks to amend Petitioner's habeas petition to add two *Brady* claims alleging that the Commonwealth misrepresented the timing of Hill's cooperation vis-à-vis his sentencing and suppressed evidence that he and Harris received favorable treatment in their pending criminal matters in exchange for their cooperation. (Corrected Mot. to Am., ECF No. 27, at 3).

**1.    Undue Delay**

Delay (i.e., the passage of time), without more, is not sufficient to justify denial of leave to amend. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)); *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). "'[H]owever, at some point, . . . delay will become 'undue,' placing an unwarranted burden on the court . . . [and] an unfair burden on the opposing party.'" *Arthur*, 434 F.3d at 204 (quoting *Cureton*, 252 F.3d at 273). Only when delay becomes undue is leave to amend properly denied. *See Romero v. Allstate Ins. Co.*, No. 01–3894, 2010 WL 2996963, at *5

(E.D. Pa. July 28, 2010) (citing *Tarkett, Inc. v. Congoleum Corp.*, 144 F.R.D. 289, 291 (E.D. Pa. 1992)).

To determine whether delay is undue, courts have considered: prejudice to the nonmovant; the movant's reasons for not amending sooner; whether permitting the amendment would unduly postpone the pending litigation; the burden on the court; and whether tactical or strategic motives underlie the delay. *See, e.g., Langbord v. U.S. Dep't of the Treasury*, 749 F. Supp. 2d 268, 275 (E.D. Pa. 2010); *Romero*, 2010 WL 2996963, at *5-12; *Cincerella v. Egg Harbor Twp. Police Dep't*, No. 06-1183, 2007 WL 268295, at *2 (D.N.J. Sept. 6, 2007). "Ultimately, 'the obligation of the district court in its disposition of the motion is to articulate the imposition or prejudice caused by the delay, and to balance those concerns against the movant's reasons for delay.'" *Synthes, Inc. v. Marotta*, No. 11-1566, 2012 WL 748758, at *6 (E.D. Pa. Mar. 6, 2012) (quoting *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 520 (3d Cir. 1988)). Nevertheless, "[e]ven if the moving party does not explain the reason for delay, 'such delay itself will not serve as a basis for denying [the] motion unless the defendant is prejudiced.'" *Cincerella*, 2007 WL 2682965, at *2 (quoting *Jenn-Air Prods. Co. v. Penn Ventilator, Inc.*, 283 F. Supp. 591, 594 (E.D. Pa. 1968)).

Importantly, "there is no presumptive period during which such a motion is considered 'timely' or after which delay becomes 'undue.'" *Bjorgung v. Whitetail Resort*, No. 03-2114, 2007 WL 2906267, at *2 (M.D. Pa. Sept. 28, 2007) (quoting *Arthur*, 434 F.3d at 205). Courts in the Third Circuit have granted motions to amend filed a year or more after the litigation was initiated. *See Langbord*, 749 F. Supp. 2d at 271-75 (finding that a four-year delay in filing a motion to amend where the addition of claims "neither introduces new factual issues nor revives irrelevant disputes" was not undue because there was no prejudice); *Doltz v. Harris & Assocs.*,

280 F. Supp. 2d 377, 392 (E.D. Pa. 2003) (granting a motion to amend where the motion was filed 18 months after the start of litigation); *cf. Cureton*, 252 F.3d at 275-76 (finding that the district court did not abuse its discretion in denying a motion to amend where a three-year delay created significant prejudice).

The Commonwealth complains that Petitioner delayed four months before filing his third PCRA petition after I stayed this matter pending resolution of his state court proceedings. (Resp., ECF No. 28, at 2). It also contends that Petitioner should have brought these two claims earlier. (*Id.* at 8-9). It observes that Petitioner has had Hill's 2011 federal sentencing transcript – the basis for his claim that Hill also received favorable treatment in a criminal case in exchange for his cooperation – since January 2020, nine months before Petitioner amended his habeas petition the first time, yet the claims were omitted from that amendment. (*Id.* at 5). Similarly, the Commonwealth asserts that Petitioner's proposed *Brady* claim that Harris received previously undisclosed favorable treatment in a pending criminal matter in exchange for his cooperation against Petitioner is based upon court transcripts from 2012, even though Petitioner only seeks to add the claim now. (*Id.* at 4).

Significantly, however, the Commonwealth identifies no prejudice arising from these delays. *See generally* Resp., ECF No. 28; *see also Cincerella*, 2007 WL 2682965, at *2 (a delay in seeking amendment must result in prejudice to the nonmovant for the court to deny a motion for leave to amend). Further, Petitioner has explained his reasons for not seeking leave to amend earlier. The PCRA court lacked jurisdiction to hear a third PCRA petition exhausting his additional habeas claims until the judgment on the second PCRA petition became final on February 1, 2021, approximately two and a half months after I stayed federal proceedings for him to file the new PCRA petition. (Reply, ECF No. 31, at 5). Once the judgment on his second

PCRA petition became final, Petitioner filed his third PCRA petition within 45 days, on March 18, 2021. (*Id.* at 5-6). Petitioner explains that he did not move earlier to add his two new claims regarding the alleged suppression of Hill and Harris because he was still investigating the undisclosed *Brady* violation regarding Harris. (*Id.* at 2, 5). After Petitioner completed this investigation sometime after February 1, 2021, he filed the instant motion on June 14, 2021. (*Id.* at 5; Corrected Mot. to Am., ECF No. 27). Courts have found that similar periods of time do not constitute undue delay. *See, e.g., Arthur*, 434 F.3d at 204 (stating that "only one appellate court uncovered in our research has approved of denial of leave to amend based on a delay of less than one year"); *Antoine v. KPMG Corp.*, No. 08-6415, 2010 WL 147928 (D.N.J. Jan. 6, 2010) (allowing amendment even though counsel knew of facts supporting claim for over five months); *Nesselrotte v. Allegheny Energy, Inc.*, No. 06-1390, 2007 WL 3147038, at *4 (W.D. Pa. Oct. 25, 2007) (concluding that "four-month gap between the time that Defendants learned of Plaintiff's conduct establishing the basis for their affirmative defense and counterclaims" was reasonable); *Logan v. In-Ter-Space Servs., Inc.*, No. 07-0761, 2007 WL 2343868, at *2 ("[a] five-month delay in seeking leave to amend is understandable and reasonable").[5]

---

[5] The Commonwealth points out that the transcripts at issue have been publicly available for years but does not elaborate upon the purported significance of that fact. (*See* Resp., ECF No. 28, at 4-5). It does not explicitly assert that AEDPA's one-year limitations period bars the *Brady* claims based upon these transcripts because the claims "could have been discovered through the exercise of due diligence" in light of the transcripts' public availability. *See* 28 U.S.C. § 2244(d)(1)(D). The Court will not speculate as to any arguments that the Commonwealth may have intended to make but did not develop. Accordingly, at this stage, the Court declines to address Petitioner's argument that his *Brady* claims are not time-barred because, under the Third Circuit Court of Appeals' recent decision in *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274 (3d Cir. 2021), "absent a reason to know that *Brady* material exists in a particular public record, there is no basis to impose a requirement on counsel to scour all public records that relate to witnesses involved in a trial." (Reply, ECF No. 31, at 14). In addition, the Court notes that as set forth in greater detail in section II.B.4.b, Petitioner's *Brady* claim as to Harris is based not only on public transcripts, but also on the assistant district

In addition, permitting Petitioner's proposed amendments will not burden the court or unduly delay the litigation. Federal proceedings are already stayed while Petitioner exhausts his claims in state court, and his third PCRA petition remains pending. (Order, ECF No. 25; Crim. Docket at 19). Thus, whether I grant leave to amend or not, these federal proceedings must await the resolution of the pending PCRA petition.

Finally, if Petitioner and his counsel have tactical or strategic motives in prolonging this litigation, they have certainly decided upon a counterproductive course of action. As Petitioner notes in his reply, he is serving a life sentence without the possibility of parole, and unnecessarily delaying this matter only serves to delay any relief to which he might be entitled. (Reply, ECF No. 31, at 5).

Petitioner has not unduly delayed proceedings in this matter. The Commonwealth has not identified any prejudice attributable to the limited delay necessitated by his filing of the third PCRA petition, and Petitioner has adequately explained his reasons for not seeking leave to amend sooner. Granting leave to amend now will not burden this court or unduly delay the litigation, which, in any event, would not serve Petitioner's interests in light of his current life sentence. Therefore, undue delay is not a basis upon which to deny his motion.

## 2. Bad Faith or Dilatory Motive

Similar to the "undue delay" analysis, the question of bad faith requires that the court focus on the movant's motives for not seeking leave to amend sooner. *See Adams*, 739 F.2d at 868; *see also J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 614 (3d Cir. 1987) ("[T]he question . . . of bad faith requires that we focus on the [movant's] motive for not

---

attorney's (ADA) nonpublic file notes and email correspondence. (App'x to Corrected Mot. to Am., ECF No. 26-3, at A219-20).

amending [their filing] earlier."). However, the timing of the motion, alone, is insufficient to infer a bad faith motive. *See U.S. v. Approximately 7.9 Acres of Real Property*, No. 92-1273, 1993 WL 284097, at *3 (E.D. Pa. July 28, 1993) (granting amendment where opposing party "claims that a bad faith motive can be inferred from the timing of the motion to amend [but] [t]he mere fact of a delay, however, is not enough to show bad faith").

In addition to its delay arguments noted above, the Commonwealth contends that Petitioner engaged in bad faith and dilatory tactics by filing a third PCRA petition with claims that do not correspond to the claims he presented as the basis for the current stay. (Resp., ECF No. 28, at 2). Specifically, it complains that the only claim in his PCRA petition also pled in his amended habeas petition is the *Brady* claim regarding the alleged suppression of Williams. (*Id.* at 3). It notes Petitioner did not plead his *Brady* and *Napue* claims regarding the alleged suppression of the favorable treatment of Hill and Harris in exchange for their cooperation against Petitioner, or his cumulative error claim, in his amended habeas petition, or request a stay based upon them. (*Id.*). Further, it contends that Petitioner's PCRA claim that Davis would testify that Harris did not see the shooting, thus constituting "after-discovered evidence" warranting a new trial, conflicts with Petitioner's habeas claim that trial counsel was ineffective for not interviewing Davis because it was known that Davis would provide testimony favorable to Petitioner. (*Id.* at 3-4). The Commonwealth contends that Petitioner presented the new ineffectiveness claim as a partial basis for the stay, along with his *Brady* claim regarding Williams, but that he is not attempting to exhaust the claim in state court. (*Id.*).

As an initial matter, Petitioner's, at most, four-month delay in moving for leave to add his new claims after completing his investigation of them does not, on its own, support a finding of bad faith, just as it did not support a finding of undue delay. *See Hussey Copper Ltd.*, 2009 WL

918298, at *3 ("[T]he court finds that Plaintiff's five month delay in filing the instant motion was reasonable, and thus said delay does not support a finding of bad faith."); *see also Diallo v. Alo Enters. Corp.*, No. 12-3762, 2013 WL 3772827, at *4 (D.N.J. July 17, 2013) ("No extrinsic evidence has been proffered to show that Plaintiff acted to harm Defendants and simply failing to add claims that Plaintiff had prior knowledge of does not equate to bad faith.").

The Commonwealth's arguments concerning the PCRA claims and most recently added habeas claims "not corresponding" to each other are not a basis to deny amendment. First, as Petitioner points out, it is immaterial that he has added claims in his third PCRA petition that he did not cite as a basis for his prior motion to stay. (*See* Reply, ECF No. 31, at 6). The Commonwealth has acknowledged that the *Brady* claim regarding Williams added in the prior amendment is not exhausted, which provided an independent basis to stay federal proceedings. (Resp. to Am. Hab. Pet., ECF No. 23, at 2-4).[6] Further, Petitioner's two newly proposed *Brady* claims regarding Hill and Harris also require exhaustion in state court prior to federal habeas review. Petitioner indicates he did not include these claims in his previously amended habeas petition because he was still investigating them. (Reply, ECF No. 31, at 5). However, nothing prevented Petitioner from including the claims in his most recent PCRA petition after this investigation was complete. In fact, unless and until Petitioner exhausted the claims in state court, he could not pursue them in federal court, notwithstanding his receipt of leave to amend to add them.

Next, Petitioner was not required to plead in his third PCRA petition his new habeas claim that trial counsel was ineffective for not interviewing Davis because any attempt to do so

---

[6] Presumably for this reason, the Commonwealth did not oppose Petitioner's earlier motion to stay. (Mot. to Stay, ECF No. 21, at 1 n.1).

would have proved futile in light of the fact that more than one year had elapsed since his judgment of conviction became final.  *See* 42 PA. C.S. § 9545(b)(1) (a claim in a PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final," absent an applicable exception such as an inability to discover the basis for the claim).  On the other hand, nothing prevented Petitioner from pleading his after-discovered evidence claim regarding Davis's testimony in his PCRA petition.  Indeed, after Petitioner amended his habeas petition to include the ineffectiveness claim regarding trial counsel's failure to pursue Davis's testimony, the Commonwealth suggested that Petitioner might more properly assert the claim as one based upon after-discovered evidence, depending on the facts surrounding how, why and when contact with Davis was made.  (Resp. to Am. Hab. Pet., ECF No. 23, at 8).  Both federal and state procedure permit pleading claims, even inconsistent ones, in the alternative, and Petitioner's attempt to assert all potentially viable claims in the forum permitted does not constitute bad faith.[7]  *See* FED. R. CIV. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); PA. R. CIV. P. 1020(c) ("Causes of action and defenses may be pleaded in the alternative."); *see also Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 970 (Pa. Super. Ct. 2009) ("causes of action that are inconsistent are permitted so long as they are pleaded at separate counts").

Petitioner did not engage in bad faith or dilatory tactics by waiting up to a few months to move to amend after completing his investigation of his newly proposed claims or by filing PCRA claims that did not mirror his amended habeas claims.  As such, I decline to deny his

---

[7]  In support of the potential viability of his after-discovered evidence claim, Petitioner notes that the PCRA court has recently granted an evidentiary hearing as to the claim.  (Reply, ECF No. 31, at 9).

motion on the basis that he has acted in bad faith or to delay this matter.

### 3.    Undue Prejudice

"'[P]rejudice to the nonmoving party is the touchstone for the denial of an amendment.'" *Arthur*, 434 F.3d at 204 (quoting *Cornell & Co. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)); *see also* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 (4th ed.) ("Perhaps the most important factor listed by the Court for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading."). "Prejudice under Rule 15 means undue difficulty in prosecuting [or defending] a lawsuit as a result of a change in tactics or theories on the part of the party.'" *Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1189 n.3 (3d Cir. 1994) (citing *Deakyne v. Comm'rs of Lewes*, 416 F.2d 290, 300 n.19 (3d Cir. 1969)). Here, as Petitioner notes, the Commonwealth will suffer no prejudice from the amendments because it has already responded to the arguments undergirding them in state court. Corrected Mot. to Am., ECF No. 31, at 3, 20; *see also Cureton*, 252 F.3d at 273 (when determining whether leave to amend would be prejudicial against the non-movant, courts consider whether the amendment "would result in additional discovery, cost, and preparation to defend against new facts or new theories"); *Adams*, 739 F.2d at 869 (finding no prejudice when no new facts or additional discovery was required). Indeed, the Commonwealth does not argue that it will suffer any prejudice. (*See generally* Resp., ECF No. 28). Accordingly, prejudice is not a basis to deny Petitioner's motion.

### 4.    Futility

"[A] proposed amendment that clearly is frivolous [or] advanc[es] a claim or defense that is legally insufficient on its face . . . should be denied." 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487. Given the liberal standard for amendment,

however, "courts place a heavy burden on opponents who wish to declare a proposed amendment futile." *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 229 (E.D. Pa. 2012) (citation and quotation marks omitted). If the proposed amendment is not "*clearly* futile, then denial of leave to amend is improper." *Id.* (citation and quotation marks omitted) (emphasis in original). "Specifically, an amendment to a habeas petition may be considered futile when, *inter alia*, the amendment is meritless." *Wright v. Smith*, No. 18-524, 2020 WL 1626757, at *4 (E.D. Pa. Apr. 2, 2020) (citing *Rushing v. Pennsylvania*, 637 F. App'x 55, 58 (3d Cir. 2016)); *Oke v. Wenerowicz*, No. 15-CV-61, 2016 WL 427088, at *18 (E.D. Pa. Feb. 4, 2016); *Belle v. Varner*, No. 99-5667, 2001 WL 1021135, at *9 n.11 (E.D. Pa. Sept. 5, 2001); *see also Hall v. Phelps*, 641 F. Supp. 2d 334, 342 (D. Del. 2009) (courts should deny leave to amend where the claims "lack arguable merit") (citing *Riley v. Taylor*, 62 F.3d 86, 91 (3d Cir. 1995)).

### a.     *Brady* Claims as to Hill

Petitioner seeks to amend the first claim of his petition to allege that the Commonwealth violated *Brady* by suppressing evidence that Hill received favorable treatment in a pending criminal case as part of a deal for his cooperation against Petitioner and by misrepresenting the timing of Hill's cooperation at Petitioner's trial. (Corrected Mot. for Leave to Am., ECF No. 27, at ¶ 6).

### i.     Suppression of Favorable Treatment

The Commonwealth contends that Petitioner's claim regarding the alleged suppression of Hill's favorable treatment in exchange for his cooperation against Petitioner is meritless. (Resp., ECF No. 28, at 7). It asserts that "[t]he supposed 'new' information Ogelsby cites in his current PCRA petition, Hill's sentencing transcript, merely reiterates the same information about Hill's federal deal that was presented at trial." (*Id.*). Petitioner claims that the transcript belies this

assertion and instead "underscores the significance of the trial prosecutor's due process violation." (Reply, ECF No. 31, at 15-16). He argues that Petitioner's trial counsel cross-examined Hill regarding his hope for a reduction of his earlier federal sentence due to his testimony against Petitioner, but nowhere did Hill testify that he had already received a reduced sentence in exchange for his earlier cooperation. (*Id.* at 16).

At Hill's sentencing, the Assistant United States Attorney (AUSA) requested a downward departure from Hill's sentencing guidelines pursuant to 18 U.S.C. section 3553(e), which, upon a motion by the government, provides a court "the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." (Third PCRA Pet., ECF No. 28-1, at 56; *see also* 18 U.S.C. § 3553(e)). The AUSA then specifically noted Hill's cooperation in the investigation of Rose's killing.[8] (Third PCRA Pet., ECF No. 28-1, at 57).

Contrary to Petitioner's assertion, this cooperation and the resulting sentence reduction were not suppressed. At Petitioner's trial, the following exchange between Petitioner's trial counsel and Hill occurred, disclosing the contours of the *quid pro quo* to the jury:

> Q      And you also knew, after discussing [your federal criminal] matters with the authorities in this case, the U.S. attorney and others, that the mandatory minimum sentence for what you were going to be pleading guilty for was 35 years in jail; right?
>
> A      Yes.

---

[8] The AUSA mistakenly referred to the investigation of the murder of "Kool-Aid Jeffries." (Third PCRA Pet., ECF No. 28-1, at 57). In fact, "Kool-Aid Jeffries" was the name by which Hill knew Petitioner. (*Id.* at 9).

| Q | You knew that you could not get one day under 35 years in jail unless the prosecution, the United States attorney, certified that you had provided cooperation; is that right? |
|---|---|
| A | Yes. |
| Q | And as a result of all that, you end up with 22 years; right? |
| A | Yes. |

(N.T. 6/12/13, at 86-87).

There can be no question, in light of this testimony, the Commonwealth did not suppress evidence of Hill's favorable treatment in his federal criminal matter in exchange for a government recommendation to reduce his sentence; thus, Petitioner's *Brady* claim as to this point has no merit. *Strickler*, 527 U.S. at 281-82 (a *Brady* violation requires, *inter alia*, "that evidence must have been suppressed by the State, either willfully or inadvertently"). Accordingly, leave to amend to add this claim is denied.

### ii. Misrepresentation of the Timing of Hill's Cooperation

The Commonwealth also opposes Petitioner's proposed amendment regarding the misrepresentation of the timing of Hill's cooperation vis-à-vis his federal sentencing. (Resp., ECF No. 28, at 7). It argues that Petitioner's trial counsel knew Hill's correct federal sentencing date and that the misrepresentation that it occurred prior to Hill's cooperation could not have prejudiced Petitioner because Hill's deal was revocable if federal authorities determined that he testified untruthfully against Petitioner. (*Id.*). Petitioner responds that the ADA who handled the preliminary hearing for Petitioner's homicide case, Andrew Notaristefano, engaged in a "determined, deliberate and continuous effort to advance the falsehood" that Petitioner received his federal sentence prior to his cooperation against Petitioner. (Reply, ECF No. 31, at 17). In support of this contention, he points to testimony from Hill, elicited by Notaristefano, that Hill

cooperated in the investigation of Rose's killing only after he was sentenced. (*Id.*) He also points to Notaristefano's own closing statements to the jury regarding the timing of Hill's cooperation relative to his federal sentencing. (*Id.* at 18).

Philadelphia homicide detectives investigating Rose's killing interviewed Hill on October 18, 2010. (N.T. 6/12/13, at 54-55). Hill was sentenced in his federal case to 22 years in prison on May 10, 2011, over seven months later. *USA v. Hill*, No. 2:09-cr-574 (May 10, 2011) (ECF No. 174). However, at Petitioner's trial, Notaristefano elicited false testimony from Hill that he was sentenced in the summer of 2009, one year and two months before meeting with Philadelphia homicide detectives. (N.T. 6/12/13, at 54-55, 158). Notaristefano then repeated this falsehood to the jury in his closing statement:

> And Mr. Hill was sentenced. He was sentenced. He pled guilty in August of '09 before he met [Detective] Hagan, before he gave that statement on who did it and opened up a new investigation down at SIU [Special Investigations Unit], down at the Homicide Division. He was sentenced. He got his sentence.
>
> His cooperation and his Federal case and his own case the Feds took into consideration, and they gave him the sentence that they gave him. **And he was sentenced, and he still spoke to Hagan and said I know this.** I want to get it off my chest. Can we please give credit where credit is due? And he tells Hagan what he saw. And today and last week he's still sentenced. He's still serving his sentence. **There's no cooperation here.**

(N.T. 6/14/13, at 145-46 (emphasis added)).

It is well established that the state's knowing use of perjured testimony to obtain a conviction violates the Fourteenth Amendment. *Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004) (citing *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Pyle v. Kansas*, 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214 (1942); *Mooney v. Holohan*, 294 U.S.

103, 112, 55 S.Ct. 340, 79 L.Ed. 791(1935)).  In order to make out a constitutional violation, a petitioner must show that: (1) the witness committed perjury; (2) the prosecution knew or should have known of the perjury; (3) the testimony went uncorrected; and (4) there is a reasonable likelihood that the false testimony affected the verdict.  *Lambert*, 387 F.3d at 242.  "When analyzing a claim of prosecutorial misconduct, the key question is whether [the misconduct] 'so infec[ted] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Rolan v. Coleman*, 680 F.3d 311, 321 (3d Cir. 2012) (quotation marks and citation omitted).

Nonetheless, it is not appropriate to undertake this merits determination at this time.  For present purposes, it suffices to conclude that Petitioner's claim, based upon the false testimony of Hill, repeated by the prosecutor to the jury at closing, is not "clearly futile."  *See Synthes, Inc.*, 281 F.R.D. at 229.  If Petitioner fails to show at the appropriate time that a constitutional violation occurred, the Court will deny him relief on the merits of his claim then.  However, I will grant his motion for leave to amend as to this claim because, at this stage of the proceedings, I decline to find that it is obviously lacking in merit.

### b.    *Brady* Claim as to Harris

The Commonwealth argues that Petitioner's *Brady* claim regarding its alleged failure to disclose that Harris received favorable treatment in a pending criminal matter in exchange for his cooperation against Petitioner lacks merit.  The Commonwealth contends that Petitioner "fails to proffer any evidence of the existence of any agreement, promise or understanding between Harris and the Commonwealth."  (Resp., ECF No. 28, at 5-6).

The Court disagrees that Petitioner has failed to point to any evidence of an agreement or, at a minimum, understanding between Harris and the Commonwealth.  Petitioner offers the transcript and summary from Harris's May 15, 2012 violation of probation (VOP) hearing; the

affidavit of probable cause, arrest warrant and docket for a new case filed against him while on probation; his Pennsylvania criminal history; the file notes and affidavit of the ADA's handling the VOP hearing, Melissa Francis; and email correspondence between her and Notaristefano. (App'x to Corrected Mot. to Am., ECF No. 26-3, at A164-67, A186-204, A219-25). According to Petitioner, these materials demonstrate that Francis obtained a continuance of Harris's VOP hearing to confirm that he was a cooperating witness in the Rose homicide investigation. (Reply, ECF No. 31, at 11). After allegedly receiving confirmation, Francis participated in an off-the-record sidebar at Harris's rescheduled VOP hearing, immediately following which the judge released Harris from custody. (*Id.* at 11-12). Based on these and other alleged facts, Petitioner concludes that Harris received favorable treatment at his VOP hearing in exchange for his cooperation with the Commonwealth in Petitioner's homicide case. (Reply, ECF No. 31, at 11-12). The Court has reviewed the cited materials and, based upon the information currently before me, I cannot say that Petitioner's reading of them is so strained as to render his *Brady* claim as to Harris "clearly futile" or without any "arguable merit." *Synthes, Inc.*, 281 F.R.D. at 229; *Hall*, 641 F. Supp. 2d at 342.

This evidence distinguishes this case from those cited by the Commonwealth. In those cases, the petitioners offered "no evidence" of any agreement, promise or understanding. *See Bell v. Bell*, 512 F.3d 223, 234 (6th Cir. 2008) (en banc) (stating that the court had "no reason to believe that an undisclosed agreement was the true reason" that the prosecutor wrote a letter to the parole board on behalf of the witness where the prosecutor attested that no agreement existed and the petitioner was "[w]ithout evidence to the contrary"); *Middletown v. Roper*, 455 F.3d 838, 854 (8th Cir. 2006) ("Relying purely on the sequence of events surrounding each witness, [who also both denied the existence of any agreement,] Middleton points to no evidence, beyond mere

speculation, of an undisclosed deal offered by the prosecution or even an 'understanding.'");

*Shabazz v. Artuz*, 336 F.3d 154, 165 (2d Cir. 2003) ("the fact that a prosecutor afforded favorable

treatment to a government witness, standing alone, does not establish the existence of an

underlying promise of leniency in exchange for testimony"); *Collier v. Davis*, 301 F.3d 843, 849

(7th Cir. 2002) (the petitioner "proffered no evidence of an explicit promise, agreement, or

statement made to [the witness]," and a witness's "general and hopeful expectation of leniency is

not enough to create an agreement or an understanding"). Further, none of these cases involved

a motion for leave to amend and, thus, they did not apply the liberal "clearly futile" standard

applicable to such motions. *See Synthes, Inc.*, 281 F.R.D. at 229.

Because Petitioner has offered at least some evidence that Harris received favorable

treatment in his criminal case in exchange for his cooperation against Petitioner, the Court

cannot say that his *Brady* claim is meritless.


## III.    STAY OF PROCEEDINGS

Where a habeas petition contains unexhausted claims, a court may issue a stay if: "(1)

good cause exists for the petitioner's failure to exhaust his claims; (2) the unexhausted claims are

not plainly meritless; and (3) the petitioner has not engaged in dilatory or abusive tactics."

*Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). Here, Petitioner notes that the Court has already

ordered proceedings stayed while he exhausts his existing claims and asks that the stay continue

in effect while he also exhausts the two unexhausted *Brady* claims regarding Hill and Harris in

his proposed amendment. (Reply, ECF No. 31, at 21-22). He notes that his pleading remains a

"mixed" petition of exhausted and unexhausted claims, as it was when the Court issued the

current stay, thus warranting a further stay. (*Id.* at 21). The Commonwealth requests that the

Court dismiss Petitioner's mixed petition without prejudice because he has failed to demonstrate good cause for a stay and has instead engaged in dilatory and abusive litigation tactics. (Reply, ECF No. 28, at 7-10).

The Court has already rejected the Commonwealth's contention that Petitioner has caused undue delay and engaged in bad faith litigation tactics. (*See supra* § II.B.1-2). Accordingly, we will issue the stay if good cause exists for Petitioner's failure to exhaust his unexhausted *Brady* claims regarding Williams, Hill and Harris.

Petitioner is attempting to exhaust his *Brady* claims in his pending third PCRA petition. (*See* Third PCRA Pet., ECF No. 28-1). Indeed, Petitioner filed this third PCRA petition after the Commonwealth argued in response to the prior amendment adding the Williams *Brady* claim that federal relief on the claim was unavailable because Petitioner had not exhausted it in state court. (Resp. to Am. Hab. Pet., ECF No. 23, at 2-4). Recognizing that his *Brady* claims regarding Hill and Harris would require exhaustion as well, he included them in the new PCRA petition. (*See* Third PCRA Pet., ECF No. 28-1, at 41-68). The Commonwealth complains that Petitioner should have exhausted these claims earlier, but, as noted, he only completed his investigation of these claims sometime after February 1, 2021. (Reply, ECF No. 31, at 5).

Further, I find that good cause exists due to the impending expiration of AEDPA's one-year limitations period on July 14, 2021.[9] (*See* Second Am. to Hab. Pet. and Consol. Memo., ECF No. 26-2, at 2-4; Resp., ECF No. 28, at 10 n.2). Because Petitioner has a mixed petition

---

[9] Petitioner notes that although his third PCRA petition remains pending, the determination as to whether it has been properly filed, thus tolling the limitations period, will be made by the highest state court to review the matter, well after the deadline absent tolling of July 14, 2021. (*See* Second Am. to Hab. Pet. and Consol. Memo., ECF No. 26-2, at 4; *see also* 28 U.S.C. § 2244(d)(2)).

including both exhausted and unexhausted claims, if I do not grant the stay, I must dismiss the petition, unless Petitioner opts to proceed as to his exhausted claims only. *Rhines*, 544 U.S. at 278; *Rose v. Lundy*, 455 U.S. 509, 522 (1982). Such dismissal would be without prejudice, but given the presumptive AEDPA filing deadline, Petitioner would, in effect, suffer a denial of his right to refile his petition if the deadline is later determined not tolled by his pending PCRA. *See Benchoff v. Colleran*, 404 F.3d 812, 820 (3d Cir. 2005). To ensure adjudication in federal court, Petitioner would have no choice but to forego his unexhausted claims, even though the Court has found that leave to amend to add them is warranted. Courts have found good cause under similar circumstances where refiling after a dismissal without prejudice would prove impossible or impractical. *See Gillette v. Cameron*, No. 3:11-CV-1838, 2012 WL 928606, at *4 (M.D. Pa. Mar. 19, 2012) (finding good cause where "dismissal would work to practically prevent . . . later refiling of a habeas petition.").[10]

Because Petitioner has demonstrated good cause for a stay, and because he has not engaged in dilatory, abusive or bad faith tactics, the Court shall maintain the stay in this matter pending the resolution of Petitioner's ongoing state court PCRA proceedings.

## IV.    CONCLUSION

For the foregoing reasons, the Court shall grant in part and deny in part Petitioner's motion. Petitioner's motion for leave to amend is granted as to his amended Claim Ia that the

---

[10] Principles of comity and deference to the state courts also support staying the instant proceedings. A stay will allow state collateral review to be conducted prior to federal collateral review, a practical result that aligns with the principles underlying the AEDPA. *See Rhines*, 544 U.S. at 276 (noting that a court should exercise its discretion to stay only when doing so would "be compatible with AEDPA's purposes"); *see also Roman v. DiGuglielmo*, 675 F.3d 204, 209 (3d Cir. 2012) (allowing state courts the first opportunity to pass upon federal constitutional claims furthers the policies of comity and federalism).

Commonwealth misrepresented the timing of Hill's cooperation vis-à-vis his sentencing and as to his Claim XIII that the Commonwealth suppressed evidence that Harris received favorable treatment in his pending criminal matter in exchange for his cooperation against Petitioner.  His motion is denied as to his amended Claim Ia that Hill received favorable treatment in his pending criminal matter in exchange for his cooperation against Petitioner.  Petitioner shall file an amended habeas petition consistent with this memorandum.  Further, Petitioner's request for a continuation of the stay in this matter is granted.  This matter shall remain stayed pending the resolution of Petitioner's ongoing state court post-conviction proceedings for him to properly exhaust his claims.  Within seven days of the completion of Petitioner's state court post-conviction proceedings, Petitioner's counsel shall file a status update with the Court.

BY THE COURT:

_____/s/ Lynne A. Sitarski_____
LYNNE A. SITARSKI
United States Magistrate Judge